Not Intended for Print Publication

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **BARBARA A. CRAFT**, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:04CV00084 |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **LEAR CORPORATION**, ) | By: James P. Jones |
| ) | Chief United States District Judge |
| Defendant. ) | |
| ) | |

*Mark T. Hurt, Abingdon, Virginia, for Plaintiff; Todd A. Leeson, Gentry Locke Rakes & Moore LLP, Roanoke, Virginia, for Defendant.*

In this employment discrimination case, I grant summary judgment for the employer as to the claim of sexual harassment, but deny it as to the plaintiff's claim of retaliation.

I

The plaintiff Barbara A. Craft was employed at Lear Corporation's manufacturing plant in Lebanon, Virginia, through assignment by her actual employer, Professional Personnel Services, Inc., doing business as AtWork Personnel Services ("AtWork"). She complained of sexual harassment by a regular employee

at Lear and shortly thereafter Lear asked AtWork to terminate her assignment before its normal ninety-day term. After duly exhausting her agency remedies, Craft filed this suit against Lear pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.A. §§ 2000e to 2000e-17 (West 2003 & Supp. 2005).[1] She contends that Lear is liable for sexual harassment, as well as for unlawful retaliation by prematurely ending her temporary work assignment and not considering her for permanent employment.

Following discovery, Lear has filed a Motion for Summary Judgment, which has been briefed and argued and is now ripe for decision.

II

Summary judgment is appropriate when there is "no genuine issue of material fact," given the parties' burdens of proof at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see* Fed. R. Civ. P. 56(c). In determining whether the moving party has shown that there is no genuine issue of material fact, a court must assess the factual evidence and all inferences to be drawn therefrom in the light most

---

[1] AtWork and Jeff Matney, the alleged harasser, were initially defendants in this case, but have been voluntarily dismissed by the plaintiff.

favorable to the non-moving party. *See Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir. 1985).

A

Sexual harassment claims fall into two general types: hostile work environment and quid pro quo discrimination. *See Spencer v. Gen. Elec. Co.*, 894 F.2d 651, 658 (4th Cir. 1990). Craft contends that she was the victim of a hostile work environment.

In order to prove discrimination on the basis of a hostile work environment, Craft must show "'(1) unwelcome conduct; (2) that is based on the plaintiff's sex; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer.'" *Anderson v. G.D.C., Inc.*, 281 F.3d 452, 458 (4th Cir. 2002) (quoting *Conner v. Schrader-Bridgeport Int'l, Inc.*, 227 F.3d 179, 192 (4th Cir. 2000)). To prove the third element, Craft must demonstrate that the work environment was "so polluted with sexual harassment that it altered the terms and conditions of her employment." *Id*. at 458-59. The court must assess whether the work environment was objectively hostile, "consider[ing] 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with an employee's work performance.'" *Id.* at 459 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

I find that the circumstances related by Craft in this case, even if true, and even viewed in their totality, do not amount to a hostile environment.

Craft first worked at Lear from June 12 until June 26, 2002. She was again assigned to Lear beginning July 22 until September 13, 2002. She finally worked at Lear from September 30 until December 13, 2002. During the events at question in this case, Craft worked in the so-called "wrapped inserts" area, along with other temporary and permanent assembly line workers. Craft was employed on the third (night) shift. A regular Lear employee, Jeff Matney, worked nearby as a "glue booth operator." Matney worked on the first (day) shift, but on occasion Craft worked over into the first shift or Matney began work early, so that he and Craft were working at the same time. Matney had been employed by Lear since 1994. As part of his job, Matney would often pass Craft in a narrow walkway.

Craft contends that there were three occasions over a six-month period on which Matney acted inappropriately. The first occurred in June or July of 2002. According to Craft, as Matney walked by her, "he rubb[ed] on my stomach and fe[lt]

-4-

on my sides." (Craft Dep. Ex. 4.)[2]  She told him to stop "or he would get in trouble." (*Id.*)  Craft told no one about this incident.

The second incident occurred on November 19, 2002.  According to Craft, "Besides rubbing on my stomach and feeling on my sides he purposely brushed the front side of his lower body and penis across the back lower side of my buttocks area." (*Id.*)  Sometime thereafter, Craft says that she told two supervisors that she was uncomfortable about working around Matney.

The third and final incident occurred on December 3, 2002.  "He rubbed my stomach again and brings up Thanksgiving. This time I'm standing face to face with this man (so I know its not accidently like it has been said well maybe he accidently brushed by you and doesn't mean anything by it).  I replied I had a good Thanksgiving.  He said I hope you didn't eat to [sic] much and proceeded to rub up and down on my sides." (*Id.*)

Craft complained to a supervisor and Matney was questioned.  He denied any misconduct.  The company decided to move Craft to another part of the plant, away from Matney, and told Matney not to have further contact with her.  There were no other incidents.

---

[2] Craft detailed the incidents in a handwritten memorandum dated December 13, 2002, which she gave to Lear.

-5-

These facts, even accepting them in a light most favorable to the plaintiff, do not rise to the level of a hostile work environment within the purview of Title VII. While it is true that Matney's conduct was physical in nature, it was not sufficiently severe or pervasive to be actionable. *See Hosey v. McDonald's Corp.*, No. AW-95-196, 1996 U.S. Dist. LEXIS 8855, at *7 (D. Md. May 17, 1996) (holding that three incidents of pinching and grabbing an employee's buttocks over a two-month period were not sufficiently severe or pervasive), *aff'd*, No. 96-1891, 1997 U.S. App. LEXIS 10713 (4th Cir. May 12, 1997) (unpublished).

In addition, even if Matney's conduct was sufficient to produce a hostile work environment, there is insufficient evidence to impute the conduct to Lear. While there are allegations that Lear supervisors were earlier given "general knowledge" of Craft's concern about Matney, the central fact is that Craft was removed form Matney's vicinity after she made a specific complaint about his conduct and no further sexual harassment occurred. *See Spicer v. Va. Dep't of Corrections*, 66 F.3d 705, 710-712 (4th Cir. 1995) (holding that employer was not liable after taking remedial action that resulted in cessation of offensive conduct).

B

On the other hand, I find that the plaintiff has made out a jury issue of unlawful retaliation.

-6-

To establish a prima facie case of retaliation, Craft must present evidence that she engaged in a protected activity, her employer took an adverse employment action against her, and there is a causal connection between the two events. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 443 (4th Cir. 1998). The employer may rebut the plaintiff's prima facie case by offering non-retaliatory reasons for its actions. *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994) (citing *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989)). "The burden then shifts back to plaintiff to prove the pretextual nature of those reasons." *Id*.

It takes but little to show a causal connection between protected activity and the adverse employment action. *Tinsley*, 155 F.3d at 443. Here there was a very short period of time between Craft's complaint and the termination of her employment. *See Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004) (stating "a causal connection for purposes of demonstrating a prima facie case exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity"). While Lear now claims that Craft was terminated because of a routine seasonal slowdown, other facts support the pretextual nature of this reason. For example, she was called a "troublemaker" by a supervisor during the investigation of her allegations, and the same Lear manager who investigated her

-7-

complaint of sexual harassment misrepresented to the Equal Employment Opportunity Commission that the company only learned of the complaint <u>after</u> she had been let go.

Based on the summary judgment record, I find that the claim that Lear retaliated against Craft as a result of her protected activity requires resolution by a jury of genuine issues of material fact.

### III

For the foregoing reasons, it is **ORDERED** as follows:

1. The Motion for Summary Judgment by the defendant is GRANTED IN PART AND DENIED IN PART;

2. Judgment in favor of the defendant is entered on the plaintiff's claim of sexual harassment; and

3. The Motion for Summary Judgment is denied as to the plaintiff's claim of retaliation.

ENTER: July 19, 2005

/s/ JAMES P. JONES
Chief United States District Judge